STATE of Missouri, Respondent,

v.

Gene Morris JEFFREY, Appellant.

No. SC 93172.

Supreme Court of Missouri,
En Banc.

June 25, 2013.

Tyler Patrick Coyle, Ellen H. Flottman, Public Defender's Office, Columbia, for Jeffrey.

Jessica P. Meredith, Attorney General's Office, Jefferson City, for The State.

ZEL M. FISCHER, Judge.

The jury found Gene Jeffrey guilty of two counts of sexual misconduct involving a child under § 566.083 [1] and two counts of attempted sexual misconduct involving a child. The evidence was that Jeffrey knowingly exposed his genitals to girls less than 15 years of age from the front door or window of his home. On appeal, Jeffrey argues that § 566.083 is unconstitutionally overbroad because it infringes on activities protected by the First and Fourteenth amendments and is unconstitutional as applied to him. In the alternative, Jeffrey argues that the State presented insufficient evidence to support his convictions.

**1.** All statutory references are to RSMo Supp. 2010, unless otherwise noted.

The record shows that Jeffrey stood nude in either his front doorway or a front window just as young girls passed his home. Several witnesses testified that, when they saw him, Jeffrey was facing the street. Jeffrey has not demonstrated that § 566.083 is overbroad because he has failed to show how the statute serves to discourage the citizens of this State from engaging in protected speech. This Court concludes, therefore, that § 566.083 is not unconstitutionally overbroad, that it is constitutional as applied to Jeffrey, and that his conviction is supported by sufficient evidence. The judgment of the circuit court is affirmed.

### Factual and Procedural History

One afternoon in early January 2010, M.T., a 10–year–old girl, was walking home from school. The girl frequently walked the approximate half-mile from the school to her home. As she passed the home of Gene Jeffrey, M.T. saw Jeffrey standing behind the glass storm door of his home, facing the street. Jeffrey was fully nude, and M.T. could see his whole body. Frightened by the experience, M.T. did not initially tell anyone what she had seen.

Later that month, on January 22, M.T. again was walking home from school. She was joined by her friend and classmate, A.K.O., who was also 10 years old. As the two girls approached Jeffrey's home, A.K.O. saw Jeffrey standing behind the glass storm door of his home facing the street. Jeffrey was fully nude, and A.K.O. could see him from head to ankles. A.K.O. looked away, and when she looked back, the front door was closed. A.K.O. told M.T. what she had seen. M.T. did not look but told her friend that she had seen a nude man at that house about a week before. Upon arriving at A.K.O.'s home, the girls told A.K.O.'s mother about what

had happened, and A.K.O.'s mother reported the incident to the police.

In response to the report, Deputy Jenkins visited Jeffrey's home. Deputy Jenkins told Jeffrey that two girls had seen a nude man through the glass storm door as they were walking home from school. Jeffrey, who was in his early 70s, told Deputy Jenkins that he was retired and that he had taken a shower prior to going hunting around the time the girls reported seeing the nude man. Jeffrey stated that he may have gone to the front door to shut it either before or after taking his shower. He denied seeing the girls outside and questioned whether anyone could see into his house through the glass door.

Ten months later, on November 10, 2010, A.K.O. again was walking home from school. As she passed Jeffrey's home, she saw Jeffrey standing nude in front of a bedroom window with the blinds pulled up halfway. Jeffrey was facing the street, and A.K.O. saw from his chest to his knees. When she arrived home, A.K.O. told her mother about what she saw. A.K.O.'s mother drove A.K.O. back to Jeffrey's house to "see what was going on." A.K.O.'s mother noticed the blinds pulled up "unusually high." She could see the furniture inside the house but did not see anyone inside. As A.K.O.'s mother was driving up, she saw another girl, M.K.H., walking toward Jeffrey's house from the opposite direction. When M.K.H. was almost directly in front of the house, Jeffrey appeared in front of the window, completely nude. M.K.H. did not see Jeffrey. A.K.O.'s mother could see him from his knees to his chest and drove directly in front of the house to block M.K.H.'s view. As soon as she stepped on the gas, Jeffrey stepped out of the window. A.K.O.'s mother picked up M.K.H. and called the police.

Several days later, Lieutenant Scott Schoenfeld went to Jeffrey's home to investigate. Jeffrey told Lieutenant Schoenfeld that he had been hunting that day, and he had taken a shower around the time the girls would have been walking by his house. Jeffrey denied raising the blinds. He also denied standing in the window, claiming instead he might have been sitting on the bed and might have been getting some clothes from the room after his shower. Jeffrey stated that he did not see anyone looking his way. When asked if anyone had ever said anything to him about people being able to see into his home, Jeffrey stated that no one had. When asked if he remembered talking to Deputy Jenkins, Jeffrey stated that he did remember the conversation but that it had involved the front door.

Jeffrey was charged with one count of sexual misconduct involving a child in violation of § 566.083 and one count of attempted sexual misconduct involving a child for the January 22 incident, and he was charged with one count of sexual misconduct involving a child and one count of attempted sexual misconduct involving a child for the November 10 incident. Jeffrey was tried by a jury, which found him guilty of all four counts. The jury recommended a sentence of 60 days for each of the first two counts and 15 days and a fine for each of the second two counts. The judge imposed the recommend sentences to run consecutively, ordered them executed, and released Jeffrey after giving him credit for time served.

Jeffrey appealed his conviction arguing that § 566.083 is unconstitutionally overbroad and that his conviction is not supported by sufficient evidence. This Court has exclusive appellate jurisdiction over cases involving the validity of a statute. Mo. Const. art. V, § 3.

## Section 566.083 is Not Overbroad

### Standard of Review

 Whether a statute is constitutional is an issue of law that this Court reviews *de novo. State v. Vaughn,* 366 S.W.3d 513, 517 (Mo. banc 2012). "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *Id.* "The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitutional limitations." *Id.*

### Analysis

Jeffrey argues that § 566.083 is constitutionally overbroad because it potentially could be applied in violation of the Fourteenth Amendment right of privacy and First Amendment right of free speech. Section 566.083.1(1) provides:

1. A person commits the crime of sexual misconduct involving a child if the person:

(1) Knowingly exposes his or her genitals to a child less than fifteen years of age under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm to the child[.]

Jeffrey argues the statute is overbroad because it punishes innocent, protected conduct in addition to conduct the statute may lawfully prohibit. Jeffrey asserts that he is being punished merely for being nude in his own home.

The overbreadth doctrine was born in the First Amendment jurisprudence of the United States Supreme Court. *See New York v. Ferber,* 458 U.S. 747, 768, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). The doctrine resulted from the Supreme Court's recognition that the right to free expression is of ultimate importance to a democratic government. *See id.* at 768–69, 102

S.Ct. 3348. As a result, the Supreme Court has recognized—as has this Court—that it is better to invalidate laws that potentially could be construed to punish protected speech, even if those laws might be constitutionally applied, rather than to let such a law stand and chill protected speech. The Supreme Court has stated, "The doctrine is predicated on the sensitive nature of protected expression: 'persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression.'" *Id.*

■ An overbreadth challenge is a facial challenge to a statute. Generally, to prevail in a facial challenge, the party challenging the statute must demonstrate that no set of circumstances exists under which the statute may be constitutionally applied. *State v. Perry,* 275 S.W.3d 237, 243 (Mo. banc 2009). Thus, the general rule is that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Ferber,* 458 U.S. at 767, 102 S.Ct. 3348. "[I]t 'would indeed be undesirable for this Court to consider every conceivable situation which might possibly arise in the application of complex and comprehensive litigation.'" *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). By focusing on the case at hand, this Court avoids ruling on—and thereby forming constitutional rules on—hypothetical cases.

■ The overbreadth doctrine provides an exception to this general rule. Acknowledging the importance of the right to free expression and the danger of statutes that chill protected speech, the overbreadth doctrine "allow[s] persons to attack overly broad statutes even though the

conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *Ferber,* 458 U.S. at 769, 102 S.Ct. 3348. Because of the potentially far-reaching effects of this doctrine, however, the United States Supreme Court has limited its use to the First Amendment context. *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."); *Schall v. Martin,* 467 U.S. 253, 268 n. 18, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984) ("The Court will not sift through the entire class to determine whether the statute was constitutionally applied in each case. And, outside the limited First Amendment context, a criminal statute may not be attacked as overbroad.").

■ This Court has adopted the overbreadth doctrine and also limits its application to the First Amendment context. *State v. Richard,* 298 S.W.3d 529, 531 (Mo. banc 2009). The fear of chilling conduct that is "protected" by amendments or statutes other than the First Amendment is not as pronounced as it is in the First Amendment context. The application of the overbreadth doctrine solely to First Amendment cases, however, should not be taken to undermine the importance of the rights guaranteed by other constitutional provisions. While these rights receive constitutional protection, statutes infringing on them may not be challenged on overbreadth grounds. They may, however, be challenged on an *as applied* basis. This gives the courts of this state the opportunity to examine the issues presented on a solid record without resort to hypothetical facts or situations.

Despite this long line of precedent, Jeffrey argues that this Court previously has applied the overbreadth doctrine in situa-

tions other than First Amendment challenges and, therefore, should find that this statute is overbroad because it potentially could infringe on the right to privacy found in the penumbral rights of the United States Constitution.[2] Jeffrey argues that this Court, in *State v. Beine*, 162 S.W.3d 483 (Mo. banc 2005), expanded the overbreadth doctrine to protect other rights. *Beine* involved a challenge to a prior version of the statute at issue here. *Id.* at 486. This Court found that there was insufficient evidence to support the conviction under the statute. *Id.* It also found that the statute was unconstitutionally overbroad. *Id.* at 486–87.

This Court has previously rejected the argument that *Beine* extended the overbreadth doctrine outside of the First Amendment arena. In *State v. Richard*, 298 S.W.3d 529 (Mo. banc 2009), this Court held that:

> The constitutional analysis in *Beine* was unnecessary to resolve the case and, as a result, is dicta. The dicta in *Beine* does not extend the longstanding precedent that limits the overbreadth doctrine to cases implicating First Amendment concerns. Richard's case does not involve a First Amendment issue. Consequently, the overbreadth doctrine has no application, and there is no basis for holding that [the challenged statute] is facially unconstitutional.

*Id.* at 531.

Not only is *Beine*'s expansion of the overbreadth doctrine dicta, but it is bad dicta. The two cases that the *Beine* dicta relied on when discussing the overbreadth

doctrine beyond the First Amendment context do not support such a position. In *City of St. Louis v. Burton*, 478 S.W.2d 320 (Mo.1972), this Court held that a loitering ordinance was unconstitutionally vague and overbroad. The ordinance in question made it illegal for a prostitute or "lewd woman" to "wander about the streets in the nighttime." *Id.* at 321–22. But *Burton* contains a misstatement of the law. *Burton* asserts that the United States Supreme Court, in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), found a similar statute unconstitutionally vague and overbroad. *Id.* at 322. The decision in *Papachristou*, however, holds only that the statute is unconstitutionally vague. *Papachristou*, 405 U.S. at 162, 92 S.Ct. 839 ("This ordinance is void for vagueness ...."). To the extent that *Burton* and *Beine* rely on *Papachristou* for the proposition that overbreadth applies outside of the First Amendment, those cases are incorrect.

*Beine* also relied on *Christian v. City of Kansas City*, 710 S.W.2d 11 (Mo.App. 1986). In *Christian*, the court of appeals followed *Burton* and applied the overbreadth doctrine to a loitering statute that made it illegal to "loiter in or near any street or public place in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution." *Id.* at 12. The ordinance specified circumstances that may be considered to determine whether a person was manifest-

---

**2.** In *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the United States Supreme Court invalidated a law forbidding the use of contraceptives because it violated the "right to privacy." The Court held that "specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give

them life and substance." *Id.* at 484, 85 S.Ct. 1678. The Supreme Court found the "right to privacy" in these penumbral rights, relying largely on the protections of the Fourth and Fifth amendments, though also mentioning the First and Third amendments. *Id.* at 484–85, 85 S.Ct. 1678.

ing the requisite purpose which included: "That the person repeatedly beckons to, stops, or attempts to stop, or engages passersby in conversation" and "That the person repeatedly stops or attempts to stop motor vehicle operators by hailing them or gesturing to them." *Id. Beine*'s reliance on *Christian* is misplaced. *Christian,* and the cases it relied on, involved First Amendment issues.[3] *Christian* stated:

> By analogy in the free speech context, the Supreme Court in *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973), stated that "it has been the judgment of this court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." The above proposition comfortably extends to the situation presented here.

*Id.* Furthermore, *Christian* found that behaviors such as repeatedly beckoning to passersby or hailing motor vehicles were constitutionally protected based on a federal district court holding to the same effect. The federal district court found that such activities were protected by the First Amendment. *See Johnson v. Carson,* 569 F.Supp. 974, 978 (M.D.Fla.1983) ("Also, anyone standing on the street corner repeatedly talking to passers-by, even if they are old friends, could be violating the ordinance. . . . Thus the circumstances

enumerated in the Jacksonville ordinance which permit the finding that a loitering individual is manifesting the prohibited conduct forces persons to either curb their freedom of expression and association or face the risk of arrest.").

Moreover, both of these cases involved ordinances that ran the risk of infringing on First Amendment rights. Both ordinances sought to criminalize activities such as standing on street corners and speaking to people or attempting to speak to people. These ordinances ran the risk of chilling protected speech by discouraging people from engaging in these protected activities. To the extent that the *Beine* dicta relied on these authorities to apply the overbreadth doctrine outside of the First Amendment context, it was incorrect.[4]

Jeffrey's claim that § 566.083 is overbroad in violation of the First Amendment lacks merit. Jeffrey has not demonstrated how § 566.083 will—or even might—have a chilling effect on protected speech. Section 566.083 does not prohibit speech; it prohibits conduct. Specifically, it prohibits a person from "[k]nowingly expos[ing] his or her genitals to a child less than fifteen years of age under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm to the child," a prohibition that is within the power of the state to enforce. The Supreme Court has recognized that the overbreadth doctrine generally is not applicable when a statute regulates only conduct:

> [T]he plain import of our cases is, at the very least, that facial overbreadth adju-

---

3. It is also worth noting that *Christian* spoke more in the language of vagueness than overbreadth, despite its holding that the ordinance was overbroad. For instance, the court of appeals stated, "Based on this ordinance, this court cannot permit the city to leave the task of differentiating between 'casual street encounters' from 'obvious' acts reflecting the

state of mind needed for solicitation to the law enforcement officers and the courts." *Christian,* 710 S.W.2d at 13.

4. But this Court need not overrule *Beine* because this discussion was part of what this Court has previously declared dicta. *Richard,* 298 S.W.3d at 531.

dication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (citations omitted). This Court, likewise, has recognized that when conduct is at issue, the overbreadth doctrine has a more limited application. *See State v. Moore,* 90 S.W.3d 64, 66–67 (Mo. banc 2002); *State v. Helgoth,* 691 S.W.2d 281, 284–85 (Mo. banc 1985); *Beine,* 162 S.W.3d at 492 (Stith, J., dissenting).

▮ Jeffrey has not demonstrated that § 566.083 is so substantially overbroad as to be invalid. This Court cannot see how this statute, which makes it a crime for a person to "[k]nowingly expose[ ] his or her genitals to a child less than fifteen years of age under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm to the child," is likely to chill protected speech. Therefore, any claim that this statute infringes on First Amendment rights must be addressed on a case-by-case basis and on the facts before the Court. On the facts of this case, § 566.083 does not violate Jeffrey's First Amendment rights because he has conceded that his conduct was not expressive. Therefore, § 566.083.1(1) is not overbroad and is not unconstitutional as applied.

### Section 566.083 Does Not Violate the Right to Privacy

Jeffrey also argues that § 566.083 is overbroad because it infringes on the constitutionally protected right to privacy. Because the overbreadth doctrine is only available in the First Amendment context, this claim is not colorable. Jeffrey also argues that the statute, as applied to him, violated his right to privacy and punished him for engaging in innocent conduct. While the overbreadth doctrine is unavailable in the Fourteenth Amendment context, this Court must resolve Jeffrey's as applied challenge.

The United States Supreme Court has recognized that the Fourteenth Amendment guarantees a right to privacy for "personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). "This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing." *Id.* The Supreme Court has found that certain privacy rights are fundamental, many of which inure to activities conducted in the home or decisions regarding childbirth and parentage. *See, e.g., Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (recognizing the right of single people to use contracep-

tives); *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (recognizing the right to possess obscene materials in the home); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (recognizing married persons' right to contraceptives). This right is not absolute, however, and activities are not protected from regulation simply because they occur in the home.

■■■ Jeffrey argues that there are certain activities that a person must engage in while nude, such as bathing and changing clothes, and that those activities are fundamental rights that are protected by the Fourteenth Amendment's right to privacy. More specifically, Jeffrey argues that the nudity that is naturally a part of bathing and changing clothes is protected by the Fourteenth Amendment.

Even assuming that such activity constitutes a fundamental personal right guaranteed by the Fourteenth Amendment, Jeffrey's conviction would not violate his rights. Jeffrey is not being punished merely for walking around his home in the nude after showering. Several witnesses testified they saw Jeffrey standing, fully nude, in either his front clear storm door or a bedroom window. By standing in full view of the street, he eliminated any right to privacy to which he was entitled. It is difficult to support an argument that protected activity continues to remain protected when thrust into view of the general public. The right to privacy exists, in large part, to protect individuals from "unwarranted governmental intrusion" into a dwelling or other private places. *Eisenstadt*, 405 U.S. at 453, 92 S.Ct. 1029. Once protected activity has been displayed to the public, governmental intrusion is no longer quite so "unwarranted."

Moreover, under the language of § 566.083.1(1), Jeffrey could not be punished for an inadvertent exposure. To violate § 566.083.1(1), a person must *knowingly* expose his or her genitals to a child less than 15 years of age under circumstances in which he or she *knows* that his or her conduct is likely to cause affront or alarm. Section 562.016.3 provides that a person acts knowingly:

> 1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

> 2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

The statute required that Jeffrey knowingly exposed his genitals to a person less than 15 years of age. Section 562.016.3(1) instructs that this meant Jeffrey must have *been aware* that he was exposing his genitals to a person less than 15 years of age. The statute also required that he *knew* that such conduct was likely to cause affront or alarm. Section 562.016.3(2) instructs that this meant Jeffrey must have been "practically certain" that such "affront or alarm" would result. If Jeffrey did not know the girls were there, or did not know that they could see him, he could not have *knowingly* exposed his genitals. The act of merely walking from room to room in the nude without knowledge of who was, or might be, looking into the window of his home would be insufficient to demonstrate the requisite knowledge and insufficient to support a conviction under the statute. Therefore, § 566.083.1(1) did not punish Jeffrey for "innocent" or inadvertent conduct, did not violate his right to privacy, and is not unconstitutional as applied.

### Sufficiency of the Evidence

*Standard of Review*

■■■ "Generally, this Court's review of the sufficiency of the evidence is limited

to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt." *State v. Nash,* 339 S.W.3d 500, 508–09 (Mo. banc 2011). "When judging the sufficiency of the evidence to support a conviction, appellate courts do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *State v. Wooden,* 388 S.W.3d 522, 527 (Mo. banc 2013). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" *Nash,* 339 S.W.3d at 509. "[T]his Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case." *Id.*

### Analysis

Jeffrey argues that, even if this Court finds § 566.083 is constitutionally valid, the evidence was not sufficient to support his conviction. Section 566.083.1(1) has three elements: 1) the defendant knowingly exposes his or her genitals to a person, 2) he or she knows that the person is less than 15 years old, and 3) the defendant knows that such conduct is likely to cause affront or alarm. Jeffrey concedes the second element but argues that the State failed to prove that he knowingly exposed his genitals or that he knew that the exposure would cause affront or alarm.

Jeffrey argues that the State failed to present sufficient evidence to support a finding that he knew he was exposing his genitals to the girls because the evidence did not demonstrate that he knew or was aware that children were present or that they could see him. Jeffrey asserts that the evidence at trial supports an inference only that he recklessly exposed himself to passersby by being nude in his house with the blinds open.

■ Jeffrey was charged with violating § 566.083.1(1) and attempting to violate the same statute on two separate occasions, January 22, 2010, and November 10, 2010. The specific evidence for each instance will be discussed below in turn. The jury heard evidence that Jeffrey was standing in front of either his door or window on four separate occasions. In addition to the instances for which Jeffrey is charged, M.T. testified that she saw Jeffrey standing nude in his front doorway in early- to mid-January 2010. A.K.O. testified that she saw Jeffrey standing nude in his front doorway on January 22 and in his window on November 10. Also on November 10, A.K.O.'s mother testified that Jeffrey stepped in front of his window just as a third girl, M.K.H., was walking by Jeffrey's home. The fact that Jeffrey continued to appear nude in either his doorway or his window creates the inference that Jeffrey's actions were no accident. Evidence of past crimes, either charged or uncharged, may not be used to prove that the defendant has a propensity to commit crime but may be admitted at trial to show an absence of mistake. *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993); *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). Jeffrey asserted at trial and argued to this Court that he was merely walking from room to room after a shower, and the girls happened to see him nude. The evidence of repeated incidents of similar conduct undercuts this assertion and allowed the jury

to infer that Jeffrey did not mistakenly or accidentally expose himself to the girls.

Turning to the January 22, 2010, incident, the evidence was sufficient to allow a juror to reasonably infer that Jeffrey knowingly exposed himself to A.K.O. The evidence showed that, when A.K.O. and M.T. passed Jeffrey's home he appeared fully nude behind the glass storm door of his home. A.K.O. saw him, looked away, and when she looked back, Jeffrey's door was closed. This supports the inference that Jeffrey waited for the girls to come by, stood in front of the door while they passed, and then quickly closed the door after he had exposed himself. While the jury also might have inferred that Jeffrey was simply closing his door, in reviewing the sufficiency of the evidence, this Court will take all reasonable inferences in favor of the verdict. *Wooden*, 388 S.W.3d at 527.

The evidence was likewise sufficient to allow a juror to reasonably infer that Jeffrey knew he was exposing himself to A.K.O. on November 10, 2010. The evidence for that day showed that, when A.K.O. was walking home from school, she saw Jeffrey standing at a window in his home, facing the street, completely nude. A.K.O.'s mother testified that, as she drove to Jeffrey's house to "see what was going on," she saw Jeffrey step into the window just as M.K.H. passed Jeffrey's home. A.K.O.'s mother testified that Jeffrey was so close to the window that his toes had to have been touching the wall. She also testified that as soon as she revved her engine to drive in front of Jeffrey's home and block M.K.H.'s view of the window, Jeffrey stepped out of sight. Coupled with the evidence that this conduct had occurred on a number of occasions, the evidence was sufficient to allow a reasonable juror to infer that Jeffrey was aware that he was exposing himself to the girls.

Jeffrey also argues that he was unaware that the girls could see into his door or his window. No evidence suggested that the door or window had been treated in any fashion as to give Jeffrey the belief that people could not see him. This supports a reasonable inference that Jeffrey could see the girls and that he knew the girls could see him. Moreover, the fact that Jeffrey appeared just as the girls were passing supports the inference that Jeffrey was waiting until the girls came by to expose his genitals. Additionally, Deputy Jenkins expressly told Jeffrey, prior to the November 10 offenses, that children walking past his house could see him naked through the glass door. Therefore, the jury reasonably could have inferred that, on both dates in question, Jeffrey knowingly exposed his genitals to a child less than 15 years old.

Jeffrey also argues that the State presented insufficient evidence to show that he knew that his exposure would cause affront or alarm. Jeffrey's argument in large part rehashes his argument concerning the first element of the crime. He argues that he was merely walking around his home in the nude and that such evidence is insufficient to show that he knew his nudity would cause affront or alarm. He also argues that because he was not gesturing at himself or touching himself, there is no evidence that he knew his conduct was wrong. Section 566.083 does not make gesturing to or touching the genitals an element of the offense. The fact that the State did not show evidence that he was doing so is, therefore, probative of nothing.

This Court, in *State v. Moore*, held that "the words 'affront or alarm' convey, respectively, a deliberate offense or a feeling of danger." 90 S.W.3d 64, 67 (Mo. banc 2002). *Moore* also described the conduct of exposing one's genitals to a

child as "inherently criminal behavior" and found that a person is presumed to know that such criminal behavior is likely to cause affront or alarm. *Id.* at 68. The requirement that a defendant knows that his conduct will cause affront or alarm distinguishes the "criminal act of exposing oneself from conduct that is accidental, inadvertent, or otherwise done without intent to do harm."[5] *Id.* This requirement ensures that the statute criminalizes unwanted or offensive exposures while protecting conduct that is part of the normal activities of everyday life.[6]

 The evidence presented to the jury allowed for a reasonable inference that Jeffrey knowingly exposed himself or attempted to expose himself to young girls he did not know in a situation in which one would not ordinarily expect to be confronted by nudity. The girls were on their way home from school when Jeffrey appeared nude in his front storm door and window. A reasonable adult who is a stranger to a group of girls walking down the street would know that exposing his genitals to the group is likely to cause affront or alarm. Jeffrey's conduct of knowingly exposing himself to strangers is sufficient for the jury to infer that he knew his action would cause the girls affront and alarm.

 The final issue to address is whether the evidence was sufficient to support Jeffrey's attempt charges.

A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A "substan-

tial step" is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

Section 564.011. On January 22, 2010, the evidence showed that A.K.O. and M.T. were both walking home from school when A.K.O. saw Jeffrey. Jeffrey was charged with an attempted violation of § 566.083 by attempting to expose his genitals to M.T. The only difference between Jeffrey's conduct with respect to M.T. and A.K.O. is that M.T. did not look at Jeffrey. The evidence, therefore, was sufficient to find that Jeffrey, with the purpose of violating § 566.083, took a substantial step toward committing the offense. The only reason the offense was not committed was because M.T. refused to look.

 Jeffrey was also charged with attempted violation of § 566.083 for his attempt to expose his genitals to M.K.H. on January 22, 2010. The evidence demonstrated that, when M.K.H. passed by Jeffrey's house, Jeffrey appeared nude in the window. M.K.H. did not see him, in part because A.K.O.'s mother drove her car in between M.K.H. and Jeffrey's window. This evidence is sufficient to support a finding that Jeffrey had the purpose of violating § 566.083 and took a substantial step toward doing so. Again, the only reason the full offense was not committed was because M.K.H. did not see Jeffrey.

Reviewing all the evidence on the record, the evidence presented at trial was sufficient for a juror to reasonably find all of the elements necessary to convict Jef-

---

5. While this phrase was dicta in *Moore,* its characterization of the statute is accurate.

6. Such activities might include, as Jeffrey notes, changing in a locker room, a parent bathing with a young child, or parents drying off in their home with a bedroom door open

such that their children can see them. The nudity in such situations does not typically cause affront or alarm because it does not come with the sense of danger that inures to a stranger exposing his or her genitals to a young child.

frey of the crimes charged against him beyond a reasonable doubt.

### Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed.

All concur.