

# In the Missouri Court of Appeals
# Eastern District

### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102890 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 1422-CR02199-01 |
| | ) | |
| VINH Q. VU, | ) | Honorable Michael F. Stelzer |
| | ) | |
| Defendant/Appellant. | ) | FILED:  March 15, 2016 |

### OPINION

The State charged Vinh Q. Vu (Defendant) by information with one count of passing a

bad check in violation of Section 570.120, RSMo.[1] After a bench trial, the trial court found

Defendant guilty and entered judgment against him. Defendant appeals from the judgment upon

his conviction. We reverse and order Defendant discharged.

### Factual and Procedural Background

In July 2014, the State charged Defendant with passing a $2,881.28 check, drawn upon

Lindell Bank (Bank) and payable to Big Shark Bicycle Co. (Big Shark), while Defendant knew

he had no account at the Bank. See Section 570.120.1. The State further alleged that, as required

by the statute, Defendant had received actual notice in writing that the $2,881.28 check had not

been paid. Id. The State substituted an information in lieu of indictment, further alleging that

---

[1] Unless otherwise indicated, all other statutory references are to RSMo (2000) as supplemented.

Defendant was a prior offender as delineated in Sections 557.036 and 558.016. Defendant moved to suppress a statement made while in police custody, waived his right to a jury trial, and the case was set for a bench trial.

On the day of trial, the trial court found Defendant to be a prior and persistent offender. The State went forward with its evidence. Because Defendant challenges the sufficiency of that evidence, we recount it in the light most favorable to the State, granting the State all reasonable inferences therefrom. State v. Putney, 473 S.W.3d 210, 215 (Mo. App. E.D. 2015). The State elicited testimony from five witnesses.

Two of those witnesses were Big Shark employees. A salesperson testified that he spoke with Defendant twice in person and once over the phone before Defendant came to the store to buy a bike and trailer. The salesperson observed Defendant filling out a check for $2,881.28, the total amount of the sale. After checking Defendant's identification, the salesperson accepted the check for payment. Big Shark's bookkeeper testified that, on reviewing the Bank's website, he noticed the check had been returned. The check indicated that Defendant's address was 4407 Chippewa Street, Space G, in St. Louis. The bookkeeper forwarded a copy of the check to police.

The Bank's custodian of records testified that, in October 2013, the Bank had closed Defendant's account and sent a letter regarding the closed account to Defendant's Chippewa address. She further testified that the check returned to Big Shark matched Defendant's closed account.

The detective who arrested Defendant in June 2014 testified that Defendant signed a booking sheet that confirmed his address was 4407 Chippewa. During the detective's testimony, the trial court denied Defendant's motion to suppress.

Finally, the State's "bad check clerk" testified that she sent a "ten-day letter" addressed to Defendant at 4407 Chippewa Street, Space G, in St. Louis. She gleaned that address from Big Shark's bad check complaint form. The letter, sent on February 14, 2014, informed Defendant that he had until February 28 to pay off the bad check. The clerk further testified that, although ten-day letters were occasionally returned by the postal service due to a bad address, the letter to Defendant was never returned. On cross-examination, the clerk admitted that the letter was sent through regular mail: no signature was required for delivery and the State used no other method of delivery confirmation.

At the close of the State's case, Defendant moved for judgment of acquittal. The trial court denied the motion. Defendant declined to present any evidence, and again moved for judgment of acquittal. The trial court denied the second motion, and the parties argued their respective cases.

The trial court found that State had met its burden of proof on the elements of Section 570.120.1(2). Defendant had, according to the trial court, filled out the check and used it at Big Shark to buy a bike and trailer. The trial court further found that Defendant knew his account at the Bank was closed when he passed the check. Finally, as it pertains to the statutory requirement that Defendant received actual written notice of the lack of funds, the trial court found:

> Why does the Court believe that he received [the letter from the bank indicating his account was closed]? Because [the bank] mailed it to the address that he signed off on for his booking and arrest sheet. . . . And it's proof beyond a reasonable doubt that he would have known that that account was closed, and further, that he *would have received that notice because it was mailed to the address that he signed off on the booking sheet when he was arrested*.

The trial court found Defendant guilty of violating § 570.120.1(2), sentenced Defendant to five years' imprisonment, and entered judgment against him.

Defendant timely filed this appeal. In his only point on appeal, Defendant challenges whether there was sufficient evidence to conclude he received actual notice in writing that his check had not been paid, as Section 570.120.1(2) requires.

Standard of Review

In a court-tried case, the sufficiency of the evidence is determined by the same standard as in a jury-tried case. State v. Putney, 473 S.W.3d 210, 215 (Mo. App. E.D. 2015). We consider each element of the crime in turn, and must ultimately assess whether a reasonable factfinder could find each element beyond a reasonable doubt. Id. We do not weigh the evidence. State v. Jeffrey, 400 S.W.3d 303, 313 (Mo. banc 2013). Instead, we accept as true all evidence tending to prove guilt, together with all reasonable inferences that support the verdict. Id. But in doing so, we will neither supply missing evidence nor give the State the benefit of unreasonable, speculative, or forced inferences. Putney, 473 S.W.3d at 215.

Discussion

In pertinent part, Section 570.120.1(2) defines passing bad checks as when a person

> passes a check or other similar sight order . . . knowing that there are insufficient funds in or on deposit with that account . . . or that there is no such account or no drawee and fails to pay the check or sight order or other form of presentment . . . within ten days after receiving actual notice in writing that it has not been paid because of insufficient funds or credit with the drawee or because there is no such drawee.

In turn, the statute defines "actual notice in writing" as "notice of the nonpayment which is actually received by the defendant." RSMo § 570.120.2.

The statute offers two permissible, non-exhaustive examples whereby actual notice may be proven. First, the State may show "service of summons or warrant upon the defendant for the initiation of the prosecution of the check." Id. That document must contain "information of the ten-day period during which the instrument may be paid" and inform a defendant "that payment

4

of the instrument within such ten-day period will result in dismissal of the charges." Id. The actual notice requirement is also satisfied where "written communications . . . are tendered to the defendant" and the defendant "refuses to accept." Id.

In State v. Williams, a defendant was found guilty of violating Section 570.120(2) after a bench trial. Williams, 469 S.W.3d 6, 7 (Mo. App. S.D. 2014). The county clerk mailed the defendant a standard ten-day letter, which included information about the period in which defendant could pay the check to avoid prosecution. Id. at 7–8. Though the letter had a return address, it was never returned to the clerk. Id. at 8. The trial court found the unreturned letter was insufficient to establish actual written notice:

> without proof that [the defendant] actually received it—I mean, I understand the prosecutor's office mailed it. I understand it didn't come back. But it could have also gone to somebody else's mailbox or something like that. Who knows?

Concluding that finding went to the weight of the evidence rather than its sufficiency, the trial court found the defendant guilty. Id. at 7–8. On appeal, the State conceded the trial court's factual findings were sound, but argued that, as a matter of law, proof of notice is not an essential element of § 570.120.(2). We reversed, holding that by "electing to charge Defendant . . . one of the elements that the State had the burden to prove was that Defendant failed to pay the check within ten days after receiving actual notice in writing." Id. at 9.

The Williams trial court's sound, uncontested factual findings illuminate the gap between the evidence adduced at trial and the evidence required to prove actual written notice. As in Williams, there was proof Defendant lived at a certain address, proof that the State sent a ten-day letter to that address, and proof that the ten-day letter was never returned by the postal service. But there is no proof Defendant *actually received* the ten-day letter. As the Williams trial court pointed out: "it could have gone to somebody else's mailbox or something like that." Similarly,

5

the ten-day letter in this case could have met with any of a number of fates. It could have been put in a neighboring apartment's mailbox and discarded; it could have been left on Defendant's porch and blown away.

Had the State chosen to follow the procedure suggested in Section 570.120.2—"service of summons or warrant upon the defendant" that included information that any charges would be dismissed if Defendant paid the charges—perhaps the record would include documentary evidence or testimony from someone who served Defendant. But by choosing to send the ten-day letter via regular mail, the State left the record bereft of proof Defendant actually received the written notice prescribed by statute. Especially when viewed under the beyond a reasonable doubt standard, connecting the dots between an unreturned letter and the addressed person's actual receipt of that letter is an inference that can only be drawn with the help of speculation. A reasonable finder of fact may not rest a conclusion upon "sheer speculation." State v. Grim, 854 S.W.2d 403, 414 (Mo. banc 1993). We therefore find Williams directly on point and accordingly hold there was insufficient evidence for a reasonable factfinder to determine that Defendant received "actual notice in writing" that his check to Big Shark had not been paid.

Conclusion

We reverse Defendant's judgment of conviction and vacate the sentence imposed. The record does not contain any indication that the State has additional evidence against Defendant on the written notice issue, nor did the State request a remand. We accordingly order Defendant discharged. See Rule 30.22.

_____
Mary K. Hoff, Judge

Robert G. Dowd, Jr., Presiding Judge and Roy L. Richter, Judge, concur.

6