

# Missouri Court of Appeals
## Southern District
### Division One

STATE OF MISSOURI,         )
                                        )

    Plaintiff-Respondent,     )
                                        )

vs.                          )         No. SD35544
                                        )

CHRISTOPHER I. BULLER,     )        Filed July 29, 2019
                                        )

    Defendant-Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF BARTON COUNTY

Honorable David R. Munton

AFFIRMED

Christopher I. Buller ("Defendant") appeals the trial court's judgment convicting him, following a jury trial, of financially exploiting Suzanne Richardson ("Victim"), an elderly person, *see* section 570.145.[1] Defendant was sentenced as a prior and persistent offender to thirty years' imprisonment. On appeal, Defendant contends in two points that the trial court committed reversible error when it (1) admitted certain exhibits at trial and (2) denied Defendant's motion to dismiss the case at the close of all of the evidence. Finding no merit in either of Defendant's points, we affirm.

---

[1] Because the value of the property that Defendant obtained control of by deception from Victim exceeded $50,000, Defendant's conviction was a class A felony. *See* section 570.145.1. All statutory references are to RSMo Cum.Supp. (2005).

## Discussion

The relevant factual and procedural background is provided, *infra*, in our discussion of Defendant's two points relied on, which, for ease of analysis, are reviewed in reverse order.

### *Point 2 – Conviction is Supported by Sufficient Evidence*

Defendant's second point contends that the trial court erred when it "den[ied] Defendant's Motion to Dismiss this case at the close of all the evidence for the reason that there was an irreconcilable conflict in the evidence to such an extent that the judgment and verdict were against the greater weight of the evidence." Before proceeding to the merits of Defendant's argument, we note that "[a]n appellate court does not engage in a weight-of-the-evidence review in a criminal case." **State v. Cole**, 384 S.W.3d 318, 321 (Mo.App. 2012). Accordingly, we limit our review to whether *sufficient evidence* supported Defendant's conviction for the financial exploitation of an elderly person.

"'Generally, this Court's review of the sufficiency of the evidence is limited to whether the State has introduced sufficient evidence for any reasonable juror to have been convinced of the defendant's guilt beyond a reasonable doubt.'" **State v. Jeffrey**, 400 S.W.3d 303, 312–13 (Mo. banc 2013) (quoting **State v. Nash**, 339 S.W.3d 500, 508–09 (Mo. banc 2011)).

> When judging the sufficiency of the evidence to support a conviction, appellate courts do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences. This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. This Court will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case.

*Id.* at 313 (internal quotation marks and citations omitted).

Defendant was charged with a violation of section 570.145 for, over a period of time from January 1, 2011, through March 17, 2014, obtaining control of at least $50,000 of Victim's property through deception. Viewed in accordance with our standard of review, *supra*, the following facts were adduced at Defendant's trial.

Victim was born in April of 1928 and, later in life, inherited "a fair amount of wealth from her parents" who had been "very lucky" in the stock market. She was an accountant and, for a time, co-owned an office supply business in Nevada, Missouri, with her late husband. Victim had two daughters, one of whom, Katie Pettibon ("Daughter"), helped run the family business.

Beginning in 2011, Daughter began "hearing things from different people" concerning Victim's suspicious banking transactions or attempted banking transactions. Upon confronting Victim, Victim became angry, said it was none of Daughter's business, and refused to talk or engage with Daughter further.

During the summer months of 2014, Daughter sought and acquired conservatorship of Victim, thereby gaining control of her finances. Daughter then discovered Victim's financial records showed that Victim had cashed out $1,185,500 in Exxon Mobile stock. Financial records reflected that in late 2010, Victim opened a checking account into which, over the course of the next year, she deposited the proceeds from her stock sales in approximately $80,000 increments. After each deposit, Victim issued checks to herself for cash, which, in the aggregate, exceeded $1,200,000.

In 2015, Eric Davis turned himself in and confessed to authorities that he, along with Defendant, both of whom were acquaintances of Victim, engaged in a systematic scam to acquire Victim's money. According to Davis' confession and trial testimony, he and Defendant would

3

concoct false narratives and then call Victim asking for money. Defendant had the ability to disguise his voice on the phone and pretend to be another male or a female, which allowed him to deceive Victim. Defendant would sometimes portray himself to Victim as a bill collector who needed money from Davis. Victim was tricked into believing that if she did not provide the money, Davis would go to jail. Another false narrative involved a fictional Judge Copeland and a fictional attorney named McMillan who needed Victim's money. Davis and Defendant would decide together how much of Victim's money they wanted, whereupon Davis would set up a meeting with Victim, where she would arrive with a box or bag containing thousands of dollars in cash. Davis asked for between $40,000 and $80,000 from Victim at least once a month and would split that money with Defendant. The money was used on gambling, drinking, buying vehicles, and investing.

Defendant was charged with and convicted of violating section 570.145. That statute provides, in pertinent part:

> A person commits the crime of financial exploitation of an elderly or disabled person if such person knowingly by deception, intimidation, undue influence, or force obtains control over the elderly or disabled person's property with the intent to permanently deprive the elderly or disabled person of the use, benefit or possession of his or her property thereby benefitting such person or detrimentally affecting the elderly or disabled person. Financial exploitation of an elderly or disabled person is . . . a class A felony if the value of the property is fifty thousand dollars or more.

Section 570.145.1. As relevant here "deception" means "the use or employment of any misrepresentation, false pretense or false promise in order to induce, encourage or solicit the elderly or disabled person to enter into a contract or agreement" and includes, "[c]reating or confirming another person's impression which is false and which the offender does not believe to be true[.]" Section 570.145.2(1)(a).

4

Defendant's "against the weight of the evidence" claim does not identify or challenge any particular element of financial exploitation of an elderly person. Instead, Defendant posits that, although there was evidence that Defendant borrowed money from Victim in 2005,[2] "[t]here was no evidence as to whether [Victim] actually loaned him the money or whether it had been repaid, leaving it open to the jury to speculate whether these loans were an earlier scam." Defendant contends that the only evidence of his involvement in a "scam" was by way of Davis, who confessed to authorities and testified against Defendant at trial. Defendant dismisses the evidence derived from Davis in its entirety, stating merely that, without any further discussion or analysis and ignoring our standard of review, "Davis was a liar and a con artist whose testimony was insufficient to support the jury's verdict and a judgment of conviction against Defendant[.]"

In this case, the jury was aware of Davis' involvement in the financial exploitation of Victim and, yet, believed Davis' account that Defendant also participated in the crime. The jury was free to do so, and this court will not and cannot reweigh that credibility determination. *See Jeffrey*, 400 S.W.3d at 313. In sum, the jury was presented with sufficient evidence that Defendant acted together with Davis as part of a scheme to obtain well over $50,000 from Victim, who was in her eighties, by way of deceiving her into believing their false narratives. This evidence supports Defendant's conviction. Point 2 is denied.

### Point 1 – No Showing that Challenged Evidence was Prejudicial

Defendant's first point contends that the trial court erred when it "admit[ted] Exhibits 12-14, 16-20, and 24" ("the letters") over Defendant's relevancy objections.[3] The letters, which were discovered by Daughter while going through Victim's personal items, show that Defendant authored several written "loan" requests to Victim between January 17, 2005, and April 10,

---

[2] *See* point 1, *infra*.
[3] Defendant further objected to the letters on this ground in his motion for a new trial.

2005. Defendant argues that the letters were "irrelevant, remote, and standing alone left the jury to speculate about the loans and particularly whether they were a previous scam or had been repaid." The State disputes Defendant's claim, arguing that the letters were logically and legally relevant in proving Defendant's knowledge of Victim's finances and his motive and intent to target Victim for financial exploitation.

"We review the trial court's decision to admit or exclude evidence for an abuse of discretion." *State v. Hudson*, 230 S.W.3d 665, 669 (Mo.App. 2007). "The trial court is vested with broad discretion in ruling on questions of admissibility of evidence, and, absent a clear showing of abuse of discretion, this Court should not interfere with the trial court's ruling." *State v. Avery*, 275 S.W.3d 231, 235 (Mo. banc 2009). Moreover, our review "is for prejudice, not mere error, and the trial court's decision will be reversed only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Johnson*, 207 S.W.3d 24, 34 (Mo. banc 2006).

Here, we need not determine whether the letters were admissible for the purpose espoused by the State because, even assuming without deciding that the letters were inadmissible, as Defendant contends, Defendant fails to explain or demonstrate how their admission prejudiced him. Defendant, in his brief, merely makes a blanket assertion, "[t]he admission of these items was clearly prejudicial[,]" without providing any further explanation or analysis. Without a clear demonstration based upon specific references to the record related explicitly and coherently to relevant legal authority supporting that Defendant was actually prejudiced by the letters' admission, this Court will not, and indeed cannot, find the trial court committed *reversible* error. *See State v. Woods*, 705 S.W.2d 76, 78 (Mo.App.1985) ("Relief cannot be granted where defendant has failed to demonstrate how he was prejudiced by the court's action."). Point 1 is denied.

## Decision

The trial court's judgment is affirmed.


GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – concurs

WILLIAM W. FRANCIS, JR., J. – concurs