STATE of Missouri, Respondent,

v.

Charles E. MOORE, Appellant.

No. SC 84495.

Supreme Court of Missouri,
En Banc.

Nov. 12, 2002.

Rehearing Denied Dec. 24, 2002.

Bruce H. Galloway, Springfield, for Appellant.

T. Todd Myers, Brian D. Risley, Darrell L. Moore, Green County Prosecutor's Office, Springfield, for Respondent.

MICHAEL A. WOLFF, Judge.

Charles E. Moore was convicted of third-degree sexual misconduct, a crime committed when one "solicits another person to engage in sexual conduct under

circumstances in which he knows that his request or solicitation is likely to cause affront or alarm." Section 566.095.[1] Moore's appeal challenges the statute on its face as an unconstitutional infringement on the right of free speech.[2]

Because the sexual contact that Moore requested of a 13–year–old girl would—if engaged in—be statutory sodomy, the request occurred in circumstances he knew were likely to cause affront or alarm. On this appeal, Moore, age 61, does not challenge the fact that his solicitation of a 13–year–old girl to engage in oral sex did cause affront or alarm.

Though free-speech concerns raised by Moore require the statute to be read narrowly, that reading is not so narrow as to relieve Moore of his criminal conviction.

The judgment is affirmed.

**Facts**

Moore entered a restaurant in Springfield, Missouri on November 4, 2000. A frequent patron of the restaurant for several months, Moore was affectionately called "Grandpa" by the employees and fellow patrons of the restaurant. One such employee was a 13–year–old girl, T.N.F., whose family owns the restaurant.

During the course of a conversation on November 4, 2000, Moore asked T.N.F. if she was a good dancer, to which T.N.F. answered yes. Moore then told T.N.F. that she could go home with him and give him a lap dance. Moore asked T.N.F. if she had "ever had sex," to which T.N.F. answered that she had not. Moore followed up by asking T.N.F. if she "ever gave head or been eaten out." T.N.F. interpreted the terms "giving head" or "been eaten out" as references to oral sex. Moore told T.N.F. that she would have a

chance to do these things at his house, to which she replied "I don't know." T.N.F. said she was "scared" at this point. Before leaving the restaurant, Moore told T.N.F. that he would kill her if she told her mother or anybody about the conversation.

Moore returned to the restaurant two days later. When T.N.F. saw Moore, she became afraid and upset and told someone at the restaurant about the conversation with Moore two days earlier. Shortly thereafter, the police arrived. After reading Moore his *Miranda* rights, Officer Calhoun, of the Springfield police department, spoke with Moore about the allegations that he solicited sex from T.N.F. During the conversation, Moore admitted to Officer Calhoun that he had a conversation with T.N.F. about sex and specifically had asked her if "she had ever given head or had she ever been eating out-eaten out." However, Moore denied that he asked T.N.F. if she wanted him to teach her how to perform oral sex and denied soliciting or requesting sex from T.N.F.

Officer Calhoun then arrested Moore, who was convicted of sexual misconduct in the third degree, a misdemeanor, in a trial to the court without a jury. He was sentenced to two years' probation and required to register as a sex offender. *See* section 589.400.

**Moore's Standing and the Constitutional Challenge**

Moore argues that the statute renders criminal a broad array of speech that is constitutionally protected. He cites, for example, *Reno v. ACLU*, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997), in which the United States Supreme Court struck down a federal statute prohibiting

---

1. All references are to RSMo. 2000.

2. Because Moore challenges the validity of a state statute, this Court has exclusive appellate jurisdiction. *Mo. Const. art. V, section 3.*

"indecent" and "patently offensive" communications on the Internet. If what the statute prohibits is speech with sexual content, making such speech a criminal act would violate the First Amendment to the United States Constitution and Art. I, sec. 8 of the Missouri Constitution. *Id.*[3]

Moore raises a First Amendment challenge to the statute "on its face." Moore does not challenge the statute as it may apply to his own conduct, but as it applies to the speech activities of others. Usually, a person lacks standing to attack the validity of a statute on grounds of how it applies to someone else. *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). But challenges based upon the First Amendment are sometimes an exception.[4] Such a challenge asserts that, while a narrowly drawn statute could prohibit his activity, the challenged statute is so overbroad as to include speech that is constitutionally protected. *See State v. Carpenter,* 736 S.W.2d 406, 407 (Mo. banc 1987), citing *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Criminal statutes require particularly careful scrutiny, and "those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *City of Houston v. Hill,* 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

In this case the state concedes that Moore does have standing to challenge the constitutionality of section 566.090. The United States Supreme Court has held that, under the justiciability standards of Article III of the United States Constitution applicable to the federal courts, parties cannot concede standing and courts have an obligation to satisfy themselves that the parties have standing; *see Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). For this Court's purposes, the state's concession at least bolsters Moore's argument. *See also FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 230–31, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). The state's concession is appropriate in light of *State v. Carpenter,* 736 S.W.2d 406, under which Moore would have standing to challenge the statute on its face.

A statute should fall only if it is "substantially overbroad and not readily reconstructed to avoid privileged activity...[because if it] is not substantially overbroad [it] is unlikely to have a drastic inhibitory impact." Note, *The First Amendment Overbreadth Doctrine,* 83 HARV. L.REV. 844, 918 (1970). The United States Supreme Court adopted this position in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) where the Court said:"... where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908.

---

**3.** The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Its counterpart in the Missouri Constitution provides: "That no law shall be passed im-

pairing the freedom of speech, no matter by what means communicated: that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for all abuses of that liberty;"

**4.** RONALD D. ROTUNDA & JOHN E. NOWAK, TREATISE ON CONSTITUTIONAL LAW (3d Ed.1999), sections 2.13(f)(3) and 20.18.

This Court in *State v. Helgoth*, 691 S.W.2d 281 (Mo. banc 1985), adopted the overbreadth standard announced by the United States Supreme Court in *Broadrick*. First, this Court said that "the overbreadth doctrine is strong medicine and must be employed with hesitation, and then only as a last resort." *Helgoth*, 691 S.W.2d at 285, (citing *New York v. Ferber*, 458 U.S. 747, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). Second, this Court said the function of the overbreadth doctrine "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from pure speech toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct." *Id.* The statute at issue before this Court seems to involve both conduct, which the state can declare to be a crime, and speech.

■ As these cases make clear, First Amendment principles do not always require that a statute be struck down even though it is broadly drawn. "If the statute may fairly be construed in a manner which limits its application to a 'core' of unprotected expression, it may be upheld against the charge that it is overly broad." *State v. Carpenter*, 736 S.W.2d at 408 (Blackmar, J., dissenting); *see also, City of Houston*, 482 U.S. at 459, 107 S.Ct. 2502, and Richard H.Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853, 886–887 (1991).

### The Statute and its Interpretation

■ To interpret the statute properly it should be read carefully and in its entirety, with particular attention to what conduct a person must know is prohibited. In its entirety, the statute, section 566.095, provides:

1. A person commits the crime of sexual misconduct in the third degree if he solicits or requests another person to engage in sexual conduct *under circumstances in which he knows* that his requests or solicitation *is likely to cause affront or alarm.*

2. Sexual misconduct in the third degree is a class C misdemeanor. (Emphasis added.)

"But words are words," Shakespeare wrote. "I never yet did hear/ That the bruised heart was pierced though the ear." [5]

As the emphasized words of the statute make clear, this is not a mere prohibition of speech. The circumstances, which go beyond words, must be likely to cause "affront" or "alarm." [6]

In the context in which "affront" and "alarm" are used in section 566.095, what is prohibited are sexual requests or solicitations that the defendant knows are likely to cause such a reaction. To be impolite is not enough. To be annoying is insufficient. The words "affront or alarm" convey, respectively, a deliberate offense or a feeling of danger. At the least, real emotional turmoil must result.

While experiencing "affront or alarm" can be found after a defendant's verbal behavior has occurred, application of the statute cannot depend on the idiosyncratic

---

5. *Othello*, Act I, scene iii. For other literary and historical references, *see*, Richard Dooling, Blue Streak: Swearing, Free Speech, and Sexual Harassment (Random House 1996).

6. "Affront" is defined as "a deliberately offensive act or utterance; an offense to one's self-respect." Webster's Third New International Dictionary 36 (1993). "Alarm" is defined as "apprehension of an unfavorable outcome, of failure, or dangerous consequences; an occasion of excitement or apprehension." *Id. at* 48.

reaction of the person whose sexual favors have been solicited. What are "circumstances in which he knows" *at the time he makes the request* that it is "likely to cause affront or alarm?" If this is simply the law's way of saying a person should know better, it falls to the courts to ascertain, by reference to the statute's words, what the person should know in advance of his conduct.

To give precise meaning to what a defendant must "know," it is appropriate to refer to other portions of the criminal code. An adult is presumed to know that certain behavior is criminal. *See* section 562.031. Specifically, here, an adult should know that having oral sex with a person less than 14 years old is a felony-first-degree statutory sodomy.[7] In the circumstances here, Moore asked the 13 year old girl to participate in the crime of statutory sodomy. Regardless of how the conduct is characterized—in this statute "likely to cause affront or alarm"—an adult is deemed under the law to know that such conduct is likely to cause such an experience.

In two other sex crime sections, the legislature chose the words "likely to cause affront or alarm:" section 566.083, sexual misconduct involving a child, which occurs when a person exposes the person's genitals to a child less than 14 years of age; and section 566.093, sexual misconduct in the second degree, which also involves exposing one's genitals.[8] Both of these statutes prohibit conduct that is known or believed "likely to cause affront or alarm," presumably to distinguish a criminal act of exposing oneself from conduct that is accidental, inadvertent, or otherwise done without an intent to do harm. The phrase "circumstances likely to cause affront or alarm" in the statute involved here, section 566.095, presents a different context because the solicitation or request to engage in sexual conduct involves speech and is not inherently criminal behavior, as would be the case of sexual misconduct with a child or exposing one's genitals.

A noncommercial sexual solicitation from one adult to another—a circumstance not unknown in Springfield, Missouri—is not a conversation that could constitutionally be within the statute's prohibition.

7. Statutory sodomy in the first degree is defined as follows: "A person commits the crime of statutory sodomy in the first degree if he has deviate sexual intercourse with another person who is less than fourteen years old."

"Deviate sexual intercourse" is "any act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person."

8. The pertinent part of 566.083 provides: "A person commits the crime of sexual misconduct involving a child if the person: (1) Knowingly exposes the person's genitals to a child less than fourteen years of age in a manner that would cause a reasonable adult to believe that the conduct is likely to cause affront or alarm to a child less than fourteen years of age; (2) Knowingly exposes the person's genitals to a child less than fourteen years of age for the purpose of arousing or gratifying the sexual desire of any person, including the child; or (3) Coerces a child less than fourteen years of age to expose the child's genitals for the purpose of arousing or gratifying the sexual desire of any person, including the child."

The pertinent part of 566.093 provides: "A person commits the crime of sexual misconduct in the second degree if he: (1) Exposes his genitals under circumstances in which he knows that his conduct is likely to cause affront or alarm; or (2) Has sexual contact in the presence of a third person or persons under circumstances in which he knows that such conduct is likely to cause affront or alarm."

*See Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989); *Cf. State v. Roberts*, 779 S.W.2d 576 (Mo. banc 1989). A sexual solicitation may violate section 566.095 where, for example, the defendant uses a threat that "purposely places another person in apprehension of immediate physical injury," proscribed by section 565.070.1 (assault in the third degree), or constitutes harassment under section 565.090. *See State v. Koetting*, 616 S.W.2d 822 (Mo. banc 1981).

To read a requirement of criminal behavior, as defined in the criminal code, into section 566.095 makes precise those circumstances where even the most oblivious solicitor must know that his conduct is likely to cause affront or alarm. In those cases where the behavior is a misdemeanor, as is a violation of section 566.095, this interpretation might be considered to be reading a redundancy into the legislature's work. However, assaultive or harassing behavior, even though a misdemeanor, takes on a greater significance when charged as a violation of section 566.095 because the conviction of violating this section requires the defendant to register as a sex offender. *See* section 589.400.[9] This is perhaps the most serious consequence to Moore of his conviction in this case.

Under this statute, as construed, the state in this case appropriately assumed the burden of showing that the victim did in fact experience "affront" or "alarm" as contemplated by the statute. Moore does not challenge this fact in this appeal.

**Conclusion**

The circumstances here involve a 61–year–old man soliciting or requesting sexual conduct from a 13–year–old girl. The

requested act, were it to occur, would constitute the crime of first-degree statutory sodomy. This solicitation or request is not just speech, but conduct that the defendant under the law is presumed to know is likely to cause affront or alarm. As construed, the challenged section does not violate the constitutional guarantee of freedom of speech. The trial established that the 13 year old victim did in fact experience "affront or alarm."

The judgment is affirmed.

LIMBAUGH, C.J., BENTON, LAURA DENVIR STITH, AND PRICE, JJ., concur.

TEITELMAN, J., dissents in separate opinion filed.

WHITE, J., concurs in opinion of TEITELMAN, J.

RICHARD B. TEITELMAN, Judge, dissenting.

I respectfully dissent.

Although Appellant's speech was reprehensible, I agree with the principal opinion that Appellant has standing to challenge section 566.095 on its face as an unconstitutional infringement on the right of free speech.

The majority opinion does not address the pitfalls of a limiting construction described by the United States Supreme Court's decision in *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). The *Osborne* Court expressed serious doubt that Osborne had been provided due process. *Id.* 122–126, 110 S.Ct. 1691. The *Osborne* Court reversed the conviction and remanded "for a new trial in order to

---

**9.** The pertinent part of section 589.400 provides: "Any person who, since July 1, 1979, has been or is hereafter convicted of, been found guilty of, or pled guilty to committing, or attempting to commit, an offense of chapter 566" must register with the chief law enforcement officer of the county of the offender's residence.

ensure that Osborne's conviction stemmed from a finding that the State had proved each of the elements" of the newly constructed statute. *Id.* at 125–126, 110 S.Ct. 1691. As in *Osborne,* the majority opinion in this case has construed a statute as substantially different from its plain language. For example, it is not clear that Appellant was tried for a crime that includes the element of a solicitation or request that results in "real emotional turmoil." Even if section 566.095 is subject to a limiting construction, Appellant should be retried to ensure that the State proves each of the elements of a reformed section 566.095.

Moreover, it is inappropriate to subject section 566.095 to a limiting construction. Section 566.095 should be analyzed under the stringent scrutiny of overbreadth analysis. *Reno v. ACLU,* 521 U.S. 844, 868, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997) (content-based restriction on speech is to be accorded the most stringent review); *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (restraint of speech on the basis of its content presumptively violates the First Amendment).

The majority opinion's analysis relies on two cases (*State v. Carpenter,* 736 S.W.2d 406 (Mo. banc 1987); *City of Houston v. Hill,* 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)), both of which declined to apply such narrowing constructions.[1] A review of both cases raises, rather than relieves, doubts concerning the propriety of such a redraft of section 566.095.

In *State v. Carpenter,* this Court held that a disturbing the peace statute was unconstitutionally overbroad. The crime was defined as follows:

1. A person commits the crime of peace disturbance if:

(1) He unreasonably and knowingly disturbs or alarms another person or persons by:

. . .

(c) Threatening to commit a crime against any persons; . . .

The *Carpenter* Court noted that:

Although, a limiting construction would avoid imposition of the facial overbreadth conclusion, there is no indication that such a construction would be consistent with the intent of the legislature. In fact, the plain language of the statute would indicate to the contrary. We thus refrain from any attempt to redraft the statute.

*Carpenter,* 736 S.W.2d at 408 n. 1 (citations omitted). In the context of a First Amendment challenge, the standard for application of a limiting construction to a Missouri statute is the extent to which its language is "plain." *Id.* The majority opinion in this case does not analyze whether the language of section 566.095 is similarly "plain," but seeks to elevate the opinion of dissenting Judge Blackmar that no such standard applies. *Id.*

The *Carpenter* Court's refusal to apply a limiting construction to the peace disturbance statute should guide the decision here. The language of section 566.095 is similar to the language of the statute at issue in *Carpenter,* and it is no less plain.

The second case cited by the principal opinion for the proposition that this statute should be redrafted is *City of Houston,*

---

1. The majority opinion also refers to a law journal article, Richard H. Fallon, Jr., *Making Sense of Overbreadth,* 100 Yale L.J. 853, 886–887 (1991). The section of the law journal article cited by the majority opinion addresses in an inconclusive manner the public policy concerns of both narrowing constructions and overbreadth rulings. Professor Fallon's discourse is well-reasoned and well-written, but it cannot stand as authority.

482 U.S. at 459, 107 S.Ct. 2502. In *City of Houston*, the United States Supreme Court found unconstitutionally overbroad an ordinance that prohibited verbal interruptions of police officers. *Id.* at 461, 107 S.Ct. 2502. The ordinance made it unlawful for any person "to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." *Id.* at 455, 107 S.Ct. 2502. The City of Houston urged the Court to apply limiting constructions that would eliminate the ordinance's overbreadth. *Id.* at 467, 107 S.Ct. 2502. The Court declined, holding that a statute is not susceptible to a limiting construction if "its language is plain and its meaning unambiguous. Its constitutionality cannot 'turn upon a choice between one or several alternate meanings.'" *Id.* at 468, 107 S.Ct. 2502 (citations omitted).

As with the statutes at issue in *Carpenter* and *City of Houston*, the language of section 566.095 is plain, and its meaning is unambiguous. The elements of the crime are a mere 28 words. The words "solicits," "requests," "affront," and "alarm," are just as plain and unambiguous as the words "threatening," "disturbs," and "alarms" at issue in *Carpenter* and the words "molest," "abuse" and "interrupt" at issue in *City of Houston*.

The majority opinion has presented no reason to overturn the holding of *Carpenter*. Because section 566.095 is plain and unambiguous, it should be scrutinized on its face for overbreadth.

Section 566.095 is content-dependent regulation of speech. Such regulation presumptively violates the First Amendment. *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). It does not fall within any recognized exceptions. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) (regulation of obscenity must regulate speech that is patently offensive in light of community standards); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (prohibition of fighting words must address speech that, by its very utterance, inflicts injury or tends to incite an immediate breach of the peace); *Playtime Theatres,* 475 U.S. at 54–55, 106 S.Ct. 925 (time, place or manner restrictions upon sexually-explicit speech must be content-neutral and designed to serve a substantial governmental interest, such as zoning). Therefore, section 566.095 is an unconstitutionally overbroad prohibition of speech protected by the First Amendment. The judgment of the trial court should be reversed.