

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                )
                                  )
            Respondent,           )
                                  )
    vs.                           )    No. SD32863
                                  )    Filed:  June 24, 2014
SAMANTHA J. EDWARDS,              )
                                  )
            Appellant.            )


APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason R. Brown, Associate Circuit Judge


**AFFIRMED**

Samantha J. Edwards ("Edwards") appeals her conviction of the class B misdemeanor of second-degree sexual misconduct.  *See* § 566.093.[1]  Following a bench trial, Edwards was sentenced by the trial court to 150 days in the Greene County Jail, with credit for time served. We affirm the judgment and sentence of the trial court.

---

[1] References to section 566.093 are to RSMo Cum.Supp. 2004.  All other statutory references are to RSMo 2000, unless otherwise indicated.

**Facts and Procedural Background**

The record reveals that on May 27, 2012, at approximately 6:00 p.m., Edwards was in the back patio area of a maintenance building at the Jordan Valley Ice Park, a public park in Greene County, Missouri. While there, Edwards removed all of her clothing and exposed her genitals. The patio attached to the maintenance building was near a paved pedestrian path.

Two park employees, Vincent Herbert ("Herbert") and Charity Evans ("Evans"), arrived to lock up the building for the evening and encountered Edwards while she was naked. Edwards told them that "[t]his is my area." Herbert procured a towel for Edwards but "she kept taking it off."

Herbert called park ranger Justin Wilson ("Wilson"), and apprised him of the situation. When Wilson arrived, Edwards was near a pair of restrooms accessible from the patio. Edwards was still completely naked, but was "hiding" behind a doorframe. Wilson asked Edwards to put on her clothes "[m]ultiple times," but Edwards refused. Wilson gathered Edwards' clothes, which he handed to Edwards before directing her to enter a restroom. After several more unsuccessful requests for her to put her clothes on, Wilson entered the restroom and handcuffed Edwards. At some point during this exchange, Edwards verbally acknowledged that she was naked. Wilson suspected that Edwards was under the influence of a controlled substance and had her transported to a local hospital where Wilson filled out paperwork for a 96-hour hold.[2]

---

[2] Upon proper application, a mental health facility is authorized, for a period not to exceed ninety-six hours, to detain for evaluation and treatment an individual, suffering from a mental disorder, who presents a likelihood of serious harm to his or her person or to others. § 632.305.

Thereafter, Edwards was charged by information with the class B misdemeanor of sexual misconduct in the second degree, pursuant to section 566.093.[3] The information alleged that on or about May 27, 2012, Edwards "exposed her genitals under circumstances in which she knew that such conduct was likely to cause affront or alarm."

A bench trial was held on July 17, 2013, at which time the State introduced testimony from Herbert, Evans, and Wilson. Video exhibits were also introduced into evidence, including surveillance footage of the balcony at the Jordan Valley Ice Park maintenance building ("State's Exhibit 2"). State's Exhibit 2 depicts ample daylight during the period when Edwards was naked while cyclists were in the vicinity. The footage also shows that at one point, an individual approached Edwards and handed Edwards her bra.

Following the close of the State's evidence, Edwards' counsel moved for a judgment of acquittal. Counsel argued that the State had not met its burden to show that: (1) Edwards acted "knowingly"; (2) intended to do anything to offend anybody; or (3) that her behavior caused "affront or alarm." The trial court took the case and Edwards' motion for acquittal under advisement and reviewed the State's video exhibits in-camera.

On July 22, 2013, the trial court entered its judgment finding Edwards guilty of sexual misconduct in the second degree.[4] This appeal followed.

In her sole point on appeal, Edwards claims the trial court erred in overruling her motion for judgment of acquittal. Edwards does not contest the evidence established that she exposed her genitals. Instead, Edwards' challenge, which frames the issue for our determination, is

---

[3] The information also charged Edwards with the class B misdemeanor of property damage in the second degree pursuant to section 569.120, but she was acquitted of that charge.

[4] Although the trial court did not make a specific ruling on Edward's "Motion for Judgment of Acquittal at the Close of State's Evidence," it is deemed overruled by the filing of the trial court's judgment finding Edwards guilty of sexual misconduct in the second degree.

directed to whether the State's evidence established beyond a reasonable doubt that Edwards "knew her conduct in sitting naked in a remote part of a park was likely to cause affront or alarm."

**Standard of Review**

Our review of the sufficiency of the evidence in a court-tried case is the same as that used for a jury-tried case. ***State v. Mann***, 129 S.W.3d 462, 465 (Mo.App. S.D. 2004). The denial of a motion for acquittal is reviewed to determine whether the State adduced sufficient evidence to make a submissible case. ***Id.*** In reviewing the sufficiency of the evidence, this Court's role is limited to determining whether or not the State presented sufficient evidence from which a trier of fact reasonably could have found the defendant guilty. ***State v. Ray***, 407 S.W.3d 162, 166 (Mo.App. E.D. 2013).

> This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. In applying this standard, the reviewing court must consider the record in the light most favorable to the verdict, taking as true the evidence and all logical inferences that support a finding of guilt and ignoring the evidence and inferences that do not support a finding of guilt.

***Id.*** at 166-67 (internal citations omitted).

**Analysis**

As relevant here, section 566.093.1(1) provides that "[a] person commits the crime of sexual misconduct in the second degree if such person . . . [e]xposes his or her genitals under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm[.]" "'Affront' is defined as 'a deliberately offensive act or utterance; an offense to one's self respect[,]'" and "'[a]larm' is defined as an 'apprehension of an unfavorable outcome, of failure, or dangerous consequences; an occasion of excitement or apprehension.'" ***State v.***

4

*Moore*, 90 S.W.3d 64, 67 n.6 (Mo. banc 2002) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 36, 48 (1993)).[5]  In analyzing the language of section 566.093, our supreme court has stated that section "prohibit[s] conduct that is known or believed 'likely to cause affront or alarm,' presumably to distinguish a criminal act of exposing oneself from conduct that is accidental, inadvertent, or otherwise done without an intent to do harm."[6]  *Id.* at 68 (quoting § 566.093).

Furthermore, under section 566.093.1(1), the State was not required to prove that anyone was in fact affronted or alarmed; rather, the focus is on the defendant's knowledge that his or her behavior would cause affront or alarm.[7]  *See Jeffries*, 272 S.W.3d at 885.  "While the application of the statute cannot 'depend on the idiosyncratic reaction' of the victim, it does fall 'to the courts to ascertain, by reference to the statute's words, what the person *should* know in advance of his conduct.'"  *Brown*, 360 S.W.3d at 923 (quoting *Moore*, 90 S.W.3d at 67-68) (emphasis in original).  "An adult is presumed to know that certain behavior is criminal."  *Id.* (quoting *Moore*, 90 S.W.3d at 68) (internal quotation marks omitted).

Here, Edwards *should* have known that exposing her genitals in a public park while there was ample daylight would likely cause affront or alarm.  *See id.*  Even if Edwards believed "that

---

[5] We note that our supreme court in *Moore* defined "affront" and "alarm" in the context of section 566.095, which stated: "A person commits the crime of sexual misconduct in the third degree if he solicits or requests another person to engage in sexual conduct *under circumstances in which he knows* that his requests or solicitation *is likely to cause affront or alarm.*"  *Moore*, 90 S.W.3d at 67 (emphasis in original).  Our supreme court's definition for "affront" and "alarm" has been subsequently applied in the context of section 566.093 in *State v. Brown*, 360 S.W.3d 919, 922 (Mo.App. W.D. 2012); *State v. Jeffries*, 272 S.W.3d 883, 884-85 (Mo.App. S.D. 2008), and *State v. Dawson*, 178 S.W.3d 645, 648 (Mo.App. E.D. 2005).  As noted in *Jeffries*, "'[s]tatutes relating to the same subject matter should be construed consistently with one another.'"  *Jeffries*, 272 S.W.3d at 884 (quoting *Reed v. Director of Revenue*, 184 S.W.3d 564, 567 (Mo. banc 2006)).

[6] "While this phrase was dicta in *Moore*, its characterization of the statute is accurate."  *State v. Jeffrey*, 400 S.W.3d 303, 315 n.5 (Mo. banc 2013).

[7] Therefore, we need not indulge Edwards' assertion that none of the State's witnesses suffered either "affront" or "alarm" as those terms have been defined.  Edwards points to the testimony of Herbert, who called the situation with Edwards "a little alarming"; and the testimony of Evans, who stated that the situation with Edwards "concern[ed]" her and upset her "[a] little bit."

she was alone in a remote location of a park," as she argues in her brief, such a belief was not reasonable in light of the fact of her proximity to a paved path where several cyclists were present. This was a situation in which "one would not ordinarily expect to be confronted by nudity." *Jeffrey*, 400 S.W.3d at 315. Furthermore, Edwards' conduct does not fit into the accidental, inadvertent conduct described in *Moore*. State's Exhibit 2 shows that a passerby handed Edwards her bra, which Edwards failed to put on despite being on notice that she was visible to bystanders. Although Edwards acknowledged that she was nude, she likewise failed to comply with Herbert and Wilson's requests that she cover herself.

The trial court plainly credited this evidence and was entitled to do so. Edwards offers no argument that this evidence lacked probative value or otherwise could not support a finding that Edwards exposed her genitals under circumstances in which she knew that her conduct was likely to cause affront or alarm.[8]

Edwards' point is denied, and the judgment of conviction and sentence is affirmed.

WILLIAM W. FRANCIS, JR., C.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs

---

[8] To the extent that Edwards alleges in her brief that she was "apparently under the influence of a controlled substance" or "apparently out of her mind and confused, and was sent for a 96-hour evaluation following the incident," she has raised no argument that we can consider under our standard of review. Evidence of intoxication or drugged condition is not admissible for the purpose of negating a mental state that is an element of the offense, unless the condition was involuntarily produced and deprived the actor of the capacity to know or appreciate the nature, quality, or wrongfulness his or her conduct. § 562.076.3; *Carter v. State*, 320 S.W.3d 177, 181 (Mo.App. E.D. 2010). Here, there is no evidence in the record that Edwards was involuntarily intoxicated or in a drugged condition, which was her burden to show. *See* § 562.076.1-.2. Furthermore, we find no indication in the record that Edwards ever entered a plea of not guilty by reason of mental disease or defect.