

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI, )
      )
   Plaintiff-Respondent, )
      )
v. )   No. SD37579
      )   Filed: December 20, 2024
KEITH THOMPSON, )
      )
   Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF MISSISSIPPI COUNTY

Honorable William Edward Reeves, Special Judge

**<u>AFFIRMED</u>**

Following a jury trial, Keith Thompson (Defendant) was convicted as a prior and persistent offender of three felony counts: the unclassified felony of first-degree statutory rape (Count 1); the class C felony of third-degree child molestation (Count 2); and the class E felony of sexual misconduct with a child by indecent exposure (Count 3). *See* § 566.032; § 566.069; § 566.083.[1] The trial court sentenced Defendant to imprisonment terms of thirty years on Count 1, fifteen years on Count 2, and seven years on Count 3. The court ordered these sentences to run consecutively, for a total of 52 years in prison.

---

[1] All statutory references are to RSMo (2016). Defendant was also charged with a fourth count of second-degree kidnapping, but the jury found him not guilty of that offense.

On appeal, Defendant presents four points. His first point contends the trial court "abused its discretion and plainly erred" in denying a motion for mistrial after a State's witness testified Defendant was a "felon." Defendant's three remaining points challenge his Count 3 conviction for sexual misconduct, contending: the evidence did not demonstrate that Defendant "knowingly" exposed his genitals (Point 2); the evidence was insufficient to support Count 3 because "any exposure of [his] genitals was incidental" to the first count of statutory rape (Point 3); and his conviction and sentence for Count 3 violated the prohibition against double jeopardy and § 556.041 because his "rape conviction required [the] same exposure of genitals" (Point 4). Finding no merit in any of these points, we affirm.

**Factual and Procedural Background**

The amended information charging Defendant with the aforementioned offenses alleged that the offenses occurred on June 6, 2019, when the victim (hereinafter referred to as Victim) was 12 years old. A jury trial was held in January 2022. Victim testified at trial, and an edited videotape of her forensic interview was admitted in evidence and played to the jury. Victim also knew her assailant and identified him as Defendant to police and to the jury. We view all evidence in the light most favorable to the verdict and grant the State all reasonable inferences. *State v. Soliben*, 621 S.W.3d 585, 589-90 (Mo. App. 2021). "Contrary evidence and inferences are disregarded." *Id*. at 590. Viewed from this perspective, the following evidence was adduced at trial.

On the afternoon of June 6, 2019, Victim was on the phone with her friend, H.C. Victim was outside in an area where she could access free Wi-Fi. Defendant, a 31-year-old man, rode up on his bike. Victim knew that Defendant was dating the mother of her friend, A.J., and Victim had a "big crush" on A.J.

2

Defendant told Victim that A.J. was at Defendant's house and wanted Victim to join him there. H.C. asked Victim to whom she was speaking. Victim replied that Defendant was there and that she was going to Defendant's house to see A.J. until H.C. arrived. H.C. told Victim not to go, but Victim wanted to see A.J. Victim told police that, because Defendant was dating A.J.'s mother, "[Victim] was comfortable going to the house to meet him there." Defendant walked Victim for "3 to 5 minutes" to his "small cabin" apartment a few blocks away. Defendant said A.J. was inside.

Once inside, Defendant locked the door and told Victim that A.J. would be back in about 15 minutes. Victim sat down on the edge of the bed, which was the only furniture in the small "one room" apartment, in order to wait for A.J.

Defendant walked up to Victim and attempted to kiss Victim, but Victim moved her head. Defendant began rubbing Victim's thighs. Victim scooted away from Defendant on the bed. Defendant pursued Victim, kissed her, and began rubbing her upper thighs again, trying to get closer to her "private."

Victim got "really scared" and "terrified" because Defendant was so much bigger than she was. Victim froze and could no longer speak. Victim felt like she "was weak and had no power." Defendant removed Victim's pants and panties and placed his fingers inside Victim's "private" (which she identified at trial as her vagina). Defendant also pulled Victim's shirt "up a little bit" and "grabbed [her] boobs" through her shirt.

Defendant also placed his mouth on Victim's vagina. Then, Defendant took off his clothes, climbed on top of Victim, and put his penis in her vagina. Defendant was heavy and Victim felt like she could not move, "partially because I was scared and partially because I was really small." Victim's hands and arms were over her head at this point.

3

Victim was "terrified" and "shaking" and "couldn't talk" at the time. Victim testified that she felt "violated and scared" and that Defendant "continued to put it in and out."

Victim placed her hands and arms over her face because she "did not want to see it anymore[.]" Defendant told her to "move them" and "tried to move [her] hands from [her] eyes himself" so that she would see him with his clothes off. Victim both saw and felt Defendant place his penis in her vagina. Victim "could see him and feel him on top of her" when he "began to rape her."

After Defendant finished, Defendant told Victim that she "cannot tell anybody about this[,]" that she "better not tell anybody[,]" and that no one must find out. Victim explained that this made her more afraid than she already had been and it was why she didn't tell anyone right away.

Victim unlocked the door and left Defendant's cabin, initially returning to the location at which she had been using the Wi-Fi. Later, H.C.'s family picked up Victim and took her to their house. In a conversation with H.C., Victim alluded to Defendant having done something to her, but Victim did not go into detail and H.C. did not press her for information. H.C. testified that Victim "just seemed off" and that Victim's neck looked red that evening.

After raping Victim, Defendant went to a little league baseball game, where his friend was managing a team. The friend's girlfriend, M.A., was near the fence acting as "dugout mom" for the team. Defendant told M.A. that he "just got the best pussy" he'd "ever had in [his] life." When M.A. asked with whom Defendant had been, Defendant said he didn't know her name, but "he said he was riding his bike and he rode past her and looked back at her and she gave him some come fuck me eyes, and, so he turned around and got off his bike and started walking with her and they went to his house, slash cabin place,

4

[and] they had sex[.]" In response to questioning, Defendant professed not to know the girl's name, address, phone number, or "how old she is," and Defendant said "before [he] could get dressed, she was out the door and gone."

On June 19, 2019 (13 days after the rape), Victim's friend, K.B., a member of Victim's foster family, confided that she was late for her period. Victim told K.B. that she was also late and worried. This led to a discussion in which Victim revealed that she was no longer a virgin because Defendant had raped her. Victim hadn't told anyone because she "was scared" and "didn't want to go to court." K.B. insisted that Victim "tell" and walked Victim to the police station, where they were not taken seriously and were told that no officer was available to speak to them. K.B. returned home and told her mother (Victim's foster mother), who called the police. Victim's foster mother also arranged for Victim to see a doctor, who tested her for pregnancy and sexually transmitted diseases. When Victim was finally able to speak to a police officer, she identified Defendant as her assailant.

M.A., who worked for the newspaper, recalled her conversation with Defendant at the ballpark when Defendant's mugshot came in with a description of the offense. After some delay, she disclosed the conversation to the chief of police. The delay arose out of concern for her probation status. M.A. feared she had associated with Defendant in violation of her probation since he might be a felon. M.A. testified that the "conversation [she] had with him stood out to [her] because he didn't know the name, he didn't note age." She felt she needed to report the conversation but wanted to know whether she would get in trouble if she came forward. She "felt comfortable talking to the chief of police at the time[,]" who encouraged her to come forward. M.A. testified to the conversation with Defendant at trial and produced a team schedule which showed

there had been a game at 7:15 p.m. on the evening of the rape. Defendant told police he was at a ballgame on the day of the rape.

After Victim spoke to a police officer, she was scheduled for a forensic interview. This interview took place on June 28 (22 days after the rape). The recorded interview, which had been edited to exclude segments "not relevant to this action," was played for the jury. Victim also testified at trial. In addition, A.J. testified. He told police and the jury that he was never at Defendant's home on June 6, 2019.

Defendant declined to testify on his own behalf. The jury found Defendant guilty of first-degree statutory rape of Victim; third-degree child molestation for touching Victim's vagina with his tongue; and sexual misconduct involving a child by knowingly exposing his genitals to Victim.

In May 2022, the court held a sentencing hearing. Victim requested the prosecutor read a Victim Impact Statement in which Victim said "not a day goes by" that she doesn't think of what Defendant did to her, and it "makes [her] cringe." Victim hates to be told that she's beautiful and "cannot stand for those words to come out of another mouth because that is what" Defendant told her as he assaulted her. "Men in general" made her uncomfortable because of Defendant, who made her "feel as if all men are monsters." Victim used to love to hang out with friends and go places "until June 6th" happened, and after that, she "was afraid of large crowds[.]" Most days Victim did not "want to go anywhere at all due to the lack of feeling safe." Victim "lost so many friends due to this assault" because it caused an "inability to interact with others." Thereafter, the court sentenced Defendant as a prior and persistent offender to consecutive sentences on all three counts totaling 52 years.

This appeal followed. Additional facts will be included below as we address Defendant's four points on appeal. For ease of analysis, we will address Point 1, then Point 4, and finally, Points 2 and 3 together.

**Discussion and Decision**

*Point 1*

Defendant's first point contends the trial court abused its discretion, or alternatively, "plainly erred" in failing to grant a motion for mistrial after M.A. testified that Defendant was a "felon" in response to a question posed by defense counsel. "A mistrial is a drastic remedy that should be granted only in extraordinary circumstances." ***State v. Graves***, 619 S.W.3d 570, 575 (Mo. App. 2021). When a witness unexpectedly volunteers inadmissible information, it is within the trial court's discretion to decide what action to take. ***State v. Williams***, 660 S.W.2d 360, 361 (Mo. App. 1983). This is so because the trial court is in a better position to determine the prejudicial effect, if any, the statement had on the jury. ***State v. Anderson***, 698 S.W.2d 849, 852-53 (Mo. banc 1985). The following facts are relevant to this point.

On direct examination, M.A. testified as to why she waited to come forward about her conversation with Defendant at the ballpark. She explained that, because she works for the newspaper, she often talks to the chief of police and views various mugshots. When the prosecutor asked M.A. about her reaction to Defendant's mugshot, she explained it triggered the memory of her conversation with Defendant, but she hesitated to come forward due to concerns that he "might have a felony[.]" This testimony between the prosecutor and M.A. took place as follows:

> Q. [PROSECUTOR] Okay, so, when you saw this mugshot or article, did it trigger something in your mind?

7

A. [M.A.] Yeah, the charges, I thought maybe that conversation I had had with him stood out to me because he didn't know the name, he didn't note age. I don't know, I just felt like I needed to talk to someone and I felt comfortable talking to the chief of police at the time because I had dealt with him so much, and, also, because I was on probation, and I didn't know if I would get in trouble because I wasn't sure, but I thought [Defendant] *might have a felony*, and I was on probation, so I contacted him to [see] if I come forward, would I get in trouble.

Q. Okay. So, you – you were clear that that's why you were hesitant; is that correct?

A. Absolutely.

(Emphasis added.) Defense counsel did not object to the "felony" reference on direct examination.

On cross-examination, however, defense counsel again asked M.A. why she waited to come forward. That question elicited a response similar to the response she gave on direct:

Q. [DEFENSE COUNSEL] And, again, when did you go forward to [the chief of police] and talk to him about that mugshot?

A. [M.A.] It was in the following month, or maybe two.

Q. Is there a reason why you waited so long?

A. Yes, because I was hesitant that I could get in trouble for him being around me, because he *was a felon* and I was on probation.

Q. You were afraid [to] tell the police about [Defendant] because you could get into trouble for being around [Defendant]?

A. That's what I was asking [the chief of police], yes.

Q. Okay. Thank you, I'll take that back. And, one more question, and it has to be yes or no answer, and that's because you were on probation?

A. Yes, ma'am.

[DEFENSE COUNSEL]: That's all I have.

(Emphasis added.) Again, defense counsel did not express any concern to the court about M.A.'s "felon" reference on cross-examination. No contemporaneous objection or motion

8

to strike the statement was made. The State had no further questions, and the witness was excused. After the State moved to admit certain exhibits, the State rested, and a recess followed.

During the recess, the trial court took up several motions, the last of which was Defendant's motion for a mistrial. This motion was based on M.A.'s last comment indicating that Defendant "was a felon" in response to defense counsel's question. According to defense counsel, M.A. "blurted out" the felon reference. Defense counsel made the following argument on the motion, which the court denied:

> [DEFENSE COUNSEL]: Your Honor, the last witness, [M.A.], in her answer to me as to why she did not come forward immediately blurted out to the jurors that she was on probation and he was a felon. Her answer should have just, what she should not have mentioned that he has a – that he's a felon. That's prejudicial to the Defendant. The jurors can hold it against him. During voir dire they were not asked any questions about his prior[s], because we knew that he was not taking the stand, therefore we did not reveal his priors. And, we ask for – that you grant us a mistrial in this matter.

Defense counsel did not reference any prior testimony elicited by the State.

The trial court initially observed that the statement had actually been made twice. The court ruled that the statement elicited by defense counsel appeared to be a "spontaneous remark" that, though improper, did not warrant a mistrial.[2]

Point 1 contends the trial court erred in denying Defendant's motion for a mistrial. Defendant initially argues the court "abused its discretion" in doing so. Defendant also recognizes, however, that this claim of error might not be preserved for review, and alternatively requests plain error review of the issue, pursuant to Rule 30.20.[3] The State, on

---

[2] The trial court mistakenly thought defense counsel elicited both references, but defense counsel did not complain about the earlier reference or cite it as grounds for a mistrial to the court.

[3] All rule references are to Missouri Court Rules (2024).

9

the other hand, maintains that the issue is not preserved because: (1) Defendant failed to make a contemporaneous objection when the alleged improper comment was first made (and then affirmatively elicited the second reference); and (2) Defendant sought no relief on either occasion and only later sought a mistrial (solely on the grounds of the second statement which the defense elicited). We agree.

"Under Missouri law, objections must be made at the earliest possible opportunity, and a failure to object constitutes waiver of the claim on appeal." *State v. Neighbors*, 502 S.W.3d 745, 748 (Mo. App. 2016); *State v. Jones*, 637 S.W.3d 526, 535 (Mo. App. 2021); *see, e.g.*, *State v. Lingle*, 140 S.W.3d 178, 190 (Mo. App. 2004) (motion for mistrial after argument did not preserve for review a challenge to the State's allegedly improper argument where no contemporaneous objection was made). Thus, because Defendant failed to make a timely objection to the testimony about which he later complained, his claim of error is unpreserved. *See State v. Gwin*, 684 S.W.3d 762, 771 (Mo. App. 2024).

Generally, appellate courts do not review unpreserved issues. *See State v. Brandolese*, 601 S.W.3d 519, 525-26 (Mo. banc 2020). Rule 30.20 gives appellate courts the discretion to review unpreserved issues involving "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Id*. An appellate court should not engage in plain error review "unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Brandolese*, 601 S.W.3d at 526 (internal quotation marks and citation omitted).

Here, we decline to engage in plain error review. Defendant failed to facially establish substantial grounds for believing that a manifest injustice or miscarriage of justice resulted from the trial court denying a mistrial based on testimony that the defense elicited.

The error about which Defendant complains on appeal was self-invited. *See State v. Gee*, 684 S.W.3d 363, 372-73 (Mo. App. 2024). "[U]nder the doctrine of self-invited error, [a] party cannot complain on appeal about an alleged error in which that party joined or acquiesced[.]" *Id.* (citation omitted). Although defense counsel argued M.A. "blurted out" an improper response, the defense cannot claim surprise because counsel asked the same question as the State and elicited a nearly identical response. Accordingly, this Court will not charge the trial court with plain error for a defendant's self-invited errors. *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017). Because Defendant failed to meet his burden to show manifest injustice or a miscarriage of justice from his first claim of error, we decline plain error review. *See Brandolese*, 601 S.W.3d at 525-26.

*Point 4*

Defendant's fourth point contends that the trial court "plainly erred" by entering a conviction and sentencing Defendant on Count 3 for sexual misconduct involving a child for "exposing his genitals" to Victim. Defendant argues that, by doing so, the court violated "Section 556.041 and [Defendant's] right to be free from double jeopardy, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution[.]" According to Defendant, he was "subjected to multiple convictions and punishments for the same offense" because he had already been convicted and sentenced for Count 1 of statutory rape, which "necessarily involved the exposure of [his] genitals," and any exposure of his genitals under Count 3 was: (1) "incidental" to the charge of Count 1; and (2) "not a separate and distinct offense from Count 1." We disagree.

Claims of double jeopardy are questions of law that we review *de novo*. *State v. Collins*, 648 S.W.3d 711, 719 (Mo. banc 2022). While Defendant admits that he failed to preserve this issue, "an alleged double jeopardy violation that may be determined from the

11

face of the record is entitled to plain error review." ***State v. Hardin***, 429 S.W.3d 417, 421 (Mo. banc 2014). The record in this case permits such a review. ***Id.***; *see also* ***State v. Battle***, 685 S.W.3d 47, 49 (Mo. App. 2024).[4]

The Fifth Amendment Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, "provides two basic protections: it protects defendants from successive prosecutions for the same offense after acquittal or conviction and it protects defendants against multiple punishments for the same offense." ***Hardin***, 429 S.W.3d at 421; *see* ***State v. McTush***, 827 S.W.2d 184, 186 (Mo. banc 1992). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." ***Missouri v. Hunter***, 459 U.S. 359, 366 (1983). "Double jeopardy analysis regarding multiple punishments is, therefore, limited to determining whether cumulative punishments were intended by the legislature." ***McTush***, 827 S.W.2d at 186; ***Hardin***, 429 S.W.3d at 421. "If the defendant has 'in law and fact committed separate crimes,' multiple punishments are allowed." ***State v. Barraza***, 238 S.W.3d 187, 193 (Mo. App. 2007); *see* ***State v. Sanchez***, 186 S.W.3d 260, 266-67 (Mo. banc 2006).

Because the inquiry turns upon determination of whether the legislature intended to provide cumulative sentences for the same conduct, the analysis first requires this Court to examine the statutes pursuant to which the defendant was convicted. ***McTush***, 827 S.W.2d at 187; *see* ***Hardin***, 429 S.W.3d at 421-22. As is often the case, however, the statutes defining the offenses of statutory rape and sexual misconduct involving a child are silent as to whether the legislature intended cumulative punishments for these offenses. *See*

---

[4] The State appeared to concede Defendant's request for plain error review and responded to the issue on the merits.

§§ 566.032 and 566.083; **Hardin**, 429 S.W.3d at 421-22. In the absence of an offense-specific indication of legislative intent, the Missouri legislature has expressed its general intent regarding cumulative punishments pursuant to § 556.041 and § 556.046. *See* **Hardin**, 429 S.W.3d at 422; **McTush**, 827 S.W.2d at 187.

> Section 556.041 governs limitation on conviction for multiple offenses and provides:
>
> When the same conduct of a person may establish the commission of more than one offense he or she may be prosecuted for each such offense. Such person may not, however, be convicted of more than one offense if:
>
> (1) One offense is included in the other, as defined in § 556.046; or
>
> (2) Inconsistent findings of fact are required to establish the commission of the offenses; or
>
> (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
>
> (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

§ 556.041. The Comment to this statute states: "This section follows the general proposition that the state may prosecute and convict for separate offenses even though they arise out of the same conduct." Comment to 1973 Proposed Code § 556.041, V.A.M.S.

> Further, § 556.046.1 provides that an offense is an "included offense" when:
>
> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
> (2) It is specifically denominated by statute as a lesser degree of the offense charged; or
>
> (3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

*Id*.; *see* **McTush**, 827 S.W.2d at 187-88.

13

Our Supreme Court has observed that § 556.046.1(1) appears to codify the lesser-included offense definition announced in ***Blockburger v. United States***, 284 U.S. 299, 304 (1932). *See **McTush***, 827 S.W.2d at 188. "Analysis under either § 556.046.1(1) or *Blockburger* focuses on the statutory elements of the offenses rather than upon the evidence actually adduced at trial." ***McTush***, 827 S.W.2d at 188. "If each offense requires proof of a fact that the other does not, then the offenses are not lesser included offenses, notwithstanding a substantial overlap in the proof offered to establish the crimes." ***Id***.

Applying § 556.046.1(1) is straightforward. "The elements of each offense are gleaned from the statutes or common law definitions and then compared." ***McTush***, 827 S.W.2d at 188. "If each offense is established by proof of an element not required by the other offense, then neither offense is an included offense within the meaning of § 556.046.1(1), and the limitation on convictions for multiple offenses codified at § 556.041(1) does not apply." ***Id***. "An offense is a lesser included offense if it is impossible to commit the greater without necessarily committing the lesser." ***State v. Derenzy***, 89 S.W.3d 472, 474 (Mo. banc 2002); ***Hardin***, 429 S.W.3d at 422.

In the case at bar, the statutes codifying Counts 1 and 3 each require a statutory element not required by the other. We begin with § 566.083, governing Count 3, which provides, in relevant part, that a person commits the offense of sexual misconduct involving a child if such person:

(1) Knowingly exposes his or her genitals to a child less than fifteen years of age under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm to the child; [or]

(2) Knowingly exposes his or her genitals to a child less than fifteen years of age for the purpose of arousing or gratifying the sexual desire of any person, including the child[.]

§ 566.083.1(1)-(2).

14

With respect to Count 1, "[a] person commits the offense of statutory rape in the first degree if he or she has sexual intercourse with another person who is less than fourteen years of age." § 566.032.1.

Here, sexual misconduct by indecent exposure does not require proof of sexual intercourse. Similarly, statutory rape has only two elements: (1) sexual intercourse; (2) with a person less than fourteen years of age. Therefore, the offense does not require proof of knowing exposure of the genitals to the child.[5] Thus, contrary to Defendant's argument, the offenses are separate and distinct, and there is no double jeopardy for convicting and sentencing Defendant for these two separate offenses. *McTush*, 827 S.W.2d at 188. Point 4 is denied.

*Points 2 and 3*

Defendant's second and third points challenge the sufficiency of the evidence to support his Count 3 conviction for sexual misconduct involving a child. Sufficiency-of-the-evidence claims are reviewed on the merits, regardless of whether the issue was raised at trial. *State v. Claycomb*, 470 S.W.3d 358, 362 (Mo. banc 2015). In reviewing such a claim, this Court considers "whether a reasonable juror could find each of the elements beyond a reasonable doubt." *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). "When judging the sufficiency of the evidence to support a conviction, appellate courts do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *State v. Wooden*, 388 S.W.3d 522, 527 (Mo. banc 2013); *State v. Jeffrey*, 400 S.W.3d 303, 313 (Mo. banc 2013). Further, "this Court will not weigh the evidence anew since the fact-finder

---

[5] Indeed, Defendant's second point, *infra*, contends that this was a case in which the rape was accomplished *without* exposure of the genitals to Victim.

may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances, and other testimony in the case." **State v. Nash**, 339 S.W.3d 500, 508-09 (Mo. banc 2011). "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." **Id**. (internal quotation marks omitted); **Jeffrey**, 400 S.W.3d at 313; *see also* **State v. Devore**, 669 S.W.3d 362, 368-69 (Mo. App. 2023).

As established in the previous point, § 566.083 specifies the elements for the offense of sexual misconduct involving a child. That statute provides, in relevant part, that a person commits that offense if such person:

> (1) Knowingly exposes his or her genitals to a child less than fifteen years of age under circumstances in which he or she knows that his or her conduct is likely to cause affront or alarm to the child; [or]
>
> (2) Knowingly exposes his or her genitals to a child less than fifteen years of age for the purpose of arousing or gratifying the sexual desire of any person, including the child[.]

§ 566.083.1(1)-(2). Additionally, "the State was not required to prove that anyone was in fact affronted or alarmed; rather, the focus is on the defendant's knowledge that his or her behavior would cause affront or alarm." **State v. Edwards**, 433 S.W.3d 494, 497 (Mo. App. 2014) (construing similar language in § 566.093.1(1)). In this case, there is no dispute that Defendant exposed his genitals and was naked when the rape occurred.

Point 2 contends the evidence is insufficient to support Count 3 because the evidence did not demonstrate beyond a reasonable doubt that Defendant "knowingly" exposed his genitals. According to Defendant, the Sate failed to show "the completed crime of sexual misconduct involving a child" and "at most showed an unsuccessful attempt to show or

16

display the genitals" because Victim's testimony and prior statement "indicated that she covered her eyes during the charged offenses." We disagree.

Defendant's argument is factually incorrect because it ignores evidence that Victim did see Defendant's genitals. Victim placed her hands and arms over her face only because she "did not want to see it anymore." Further, Defendant told her to "move them" and "tried to move [her] hands from [her] eyes himself" so that she could see him with his clothes off. Thus, Defendant did everything he could so that Victim could see. Victim saw and felt Defendant climb on top of her and place his penis in her vagina. She was "scared" and "terrified." This evidence was sufficient for a reasonable juror to find, beyond a reasonable doubt, that Defendant knowingly exposed his genitals to a child less than fifteen years of age knowing his conduct was both: (1) likely to cause affront or alarm to the child; and (2) for the purpose of arousing or gratifying his sexual desire. § 566.083.1; *see, e.g.*, **State v. Moore**, 90 S.W.3d 64, 69 (Mo. banc 2002) (evidence at trial established that the 13-year-old victim "did in fact experience 'affront or alarm'").[6] Because the evidence was sufficient for a reasonable juror to find Defendant guilty of sexual misconduct involving a child beyond a reasonable doubt, Point 2 is denied.

Point 3 contends the evidence was insufficient to support Count 3 because "any exposure of [his] genitals was incidental" to the first count of statutory rape. According to Defendant, exposure of his genitals "was not a separate and distinct act done for the purpose of arousing or gratifying sexual desire, and was insufficient to support a conviction" for Count 3.

---

[6] Because Defendant's argument fails as a matter of fact, we do not reach his argument that the evidence at most showed an "unsuccessful attempt" to show or display the genitals. *See* **Jeffrey**, 400 S.W.3d at 315 (although one of the victims "refused to look" when the defendant exposed himself, evidence was sufficient to show that the defendant, "with the purpose of violating § 566.083, took a substantial step toward committing the offense").

17

We find no merit in this argument for the same reasons outlined in Points 4 and 2. As Point 4 established: (1) the two elements of statutory rape do not require proof of knowing exposure of genitals to a child; and (2) a knowing exposure of his genitals to a child less than fifteen years of age was indeed a "separate and distinct act" sufficient to support a conviction for Count 3, particularly in this case. Thus, Defendant's knowing exposure of his genitals was not just "incidental" to the statutory rape count. Defendant makes no other argument that the evidence was insufficient to show that he exposed his genitals for the purposes of arousing or gratifying his sexual desire. Further, as Point 2 established, the evidence was sufficient for a reasonable juror to find beyond a reasonable doubt that Defendant knowingly exposed his genitals to a child less than fifteen years of age knowing his conduct was not only likely to cause affront or alarm to the child, but also for the purpose of arousing or gratifying his sexual desire. § 566.083.1. Accordingly, Point 3 is denied.

The judgment of the trial court is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

JACK A. L. GOODMAN, J. – CONCUR